UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                             :

IN RE APPLICATION OF TIANRUI          :          19-MC-0545 (JMF)
(INTERNATIONAL) HOLDING COMPANY LIMITED :
FOR AN ORDER SEEKING DISCOVERY PURSUANT :    <u>MEMORANDUM OPINION</u>
TO 28 U.S.C. § 1782                :         <u>AND ORDER</u>
                             :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      This case arises from a contest for corporate control over China Shanshui Cement Group

Limited ("CSC"), one of China's largest cement producers.  Tianrui (International) Holding

Company Limited ("Tianrui"), Applicant here, is one of CSC's largest shareholders.  In 2018,

however, CSC issued convertible bonds that, when fully converted, would dilute Tianrui's

ownership interest.  That has spawned litigation in the Cayman Islands and Hong Kong, which,

in turn, prompted this case, in which Tianrui applies, pursuant to 28 U.S.C. § 1782, for discovery

from certain New York financial institutions, Respondents here, for use in the foreign

proceedings.  CSC and China National Building Materials Limited ("CNBM"), another major

shareholder of CSC, intervened and oppose Tianrui's application; in the alternative, they seek a

protective order and reciprocal discovery.  For the reasons that follow, Tianrui's application is

granted, subject to an appropriate protective order.

## BACKGROUND

      For several years, Tianrui, CSC, and CNBM have been engaged in "a continuing struggle

to control [CSC]."  ECF No. 4 ("Lardner Decl."), ¶ 9.  Tianrui and CNBM are among CSC's

most significant shareholders; as of October 2018, they held 28.16% and 16.67% of CSC's

shares, respectively.  *Id.* ¶¶ 4, 6.  In August and September 2018, CSC issued two tranches of

convertible bonds, which, when fully converted, will reduce Tianrui's share of CSC to 21.40%.

*Id.* ¶¶ 12, 18.  Tianrui suspects that the bonds "were issued to parties with hidden connections to CNBM" and another significant shareholder "for the principal purpose of diluting [its] shareholdings," *id.* ¶ 24, but it has not yet identified the ultimate beneficial owners of the bonds, *id.* ¶ 26.  In August 2018, Tianrui filed a petition in the Grand Court of the Cayman Islands, where CSC is an exempted company, ECF No. 85-1 ("Cayman Islands Grand Ct. J."), ¶ 2, seeking to wind up CSC on just and equitable grounds, Lardner Decl. ¶ 19.  In May 2019, Tianrui separately filed a writ of summons in the Grand Court of the Cayman Islands to void the convertible bonds and the shares issued through them.  ECF No. 12 ("Eldridge Decl."), ¶ 7.

In November 2019, Tianrui filed an application, pursuant to 28 U.S.C. § 1782, for this Court's assistance in obtaining evidence for use in the Cayman Islands proceedings.  ECF No. 1 ("Appl."), at 1-2.  Specifically, Tianrui sought to serve fourteen financial institutions located in this District — Respondents here[1] — with subpoenas for records of wire transfers initiated or received on or after July 1, 2018, by twelve entities and people, including CSC and CNBM.  *Id.* at 1, Ex. A; *see also* Lardner Decl. ¶¶ 24, 30.  Respondents "are commonly known to act as correspondent, intermediary, or otherwise clearinghouse banks for U.S. dollar-dominated wire transfers passing from domestic banks to international banks, and vice versa."  Lardner Decl. ¶ 28; *see also* ECF No. 5 ("Martin Decl."), ¶¶ 10-25.  The Court granted Tianrui's application without prejudice to reconsideration upon any timely filed motion to quash.  ECF No. 7, at 1.

---

[1]     Respondents are: Citibank, N.A., the Bank of New York Mellon, Société Générale, HSBC Bank USA, N.A., BNP Paribas USA, JPMorgan Chase Bank, N.A., Barclays Bank PLC, Deutsche Bank Trust Co. Americas, Bank of Nova Scotia, UBS AG, Bank of America, N.A., Standard Chartered Bank US, Commerzbank AG US, and the Clearing House Payments Company, LLC.  *Id.* at 1.

Thereafter, CSC and CNBM intervened, ECF Nos. 71, 89,[2] and now move to quash Tianrui's subpoenas, ECF Nos. 83, 90.  In the alternative, they move for entry of a protective order, ECF Nos. 86, 90, and for reciprocal discovery, ECF No. 86.

In the meantime, CSC applied to the Grand Court of the Cayman Islands for an order striking out one of the two proceedings pending there — either the petition or the writ of summons — or, alternatively, staying both Cayman Islands proceedings pending the outcome of two other proceedings between the parties in the courts of Hong Kong.  Eldridge Decl. ¶¶ 8-9.  In light of these developments, Tianrui amended its Section 1782 application to state that it seeks discovery for use in "any of the surviving Foreign Proceedings," whether in the Cayman Islands or Hong Kong.  ECF No. 72 ("Am. Appl."), at 5.  The Grand Court of the Cayman Islands later dismissed CSC's strike out application, allowing both proceedings in the Cayman Islands to proceed simultaneously with the Hong Kong proceedings.  Cayman Islands Grand Ct. J. ¶ 12.

## LEGAL STANDARDS

Congress enacted 28 U.S.C. § 1782 "to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  As relevant here, the statute provides that

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

---

[2]       As "the ultimate targets" of the discovery that Tianrui seeks, CSC and CNBM indisputably have standing to challenge the subpoenas.  *In re Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997); *see* Lardner Decl. ¶ 24.

28 U.S.C. § 1782(a).  To obtain discovery pursuant to the statute, therefore, an applicant must show three things: that "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or any interested person."  *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (internal quotation marks omitted).

If all three statutory requirements are satisfied, then "a district court is free to grant discovery in its discretion."  *In re Metallgesellschaft*, 121 F.3d 77, 78 (2d Cir. 1997).  The Supreme Court has identified four nonexclusive factors — known as the *Intel* factors — to guide the exercise of this discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65.  In evaluating the fourth factor, a court should resort to "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015). Ultimately, courts are to exercise their discretion in light of the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992).

Beyond the statutory requirements and discretionary factors, the Second Circuit has consistently declined to read additional requirements into the statute.  Thus, for example, "the 'necessity' of the materials sought is not a precondition for discovery under § 1782."  *Mees*, 793 F.3d at 303.  Instead, an applicant may satisfy the for-use requirement as long as the materials sought could "increase her chances of success" in the foreign proceeding.  *Id.* at 299.  Nor does the statute impose "a 'quasi-exhaustion' requirement."  *Id.* at 303.  That is, an applicant need not "tr[y] and fail[] to obtain the discovery" in the foreign tribunal before filing a Section 1782 application in the United States.  *Id.* (citing *Metallgesellschaft*, 121 F.3d at 79).  And although the third *Intel* factor addresses "foreign proof-gathering restrictions," 542 U.S. at 265, the evidence sought need not be either "discoverab[le]," *id.* at 260, or "admissib[le]" in the foreign proceeding, *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). In other words, in the context of the third *Intel* factor, "'[p]roof-gathering restrictions' are best understood as rules . . . that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate*" it.  *Mees*, 793 F.3d at 303 n.20; *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782.").

Finally, "Section 1782 grants district courts . . . wide discretion to tailor . . . discovery to avoid attendant problems."  *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) (per curiam).  For example, when granting a Section 1782 application, a district court may address any "[c]oncerns about maintaining parity among adversaries in litigation" by "condition[ing] relief upon" a "reciprocal exchange of information."  *Intel*, 542 U.S. at 262.  But granting the discovery request of one party to a foreign proceeding does not "*necessarily* require the district court to supervise

discovery sought by" the opposing party.  *Malev*, 964 F.2d at 101.  District courts also may enter protective orders to preserve the confidentiality of information obtained through Section 1782, and "indeed they often do."  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017).

## DISCUSSION

Applying the foregoing standards, the Court has little trouble concluding that Tianrui's amended Section 1782 application should be granted and Intervenors' motions to quash should be denied.  First, there is no reasonable dispute that the first and third statutory requirements are met: Respondents are plainly "found" within this district and Tianrui is plainly an "interested person" within the meaning of the statute.  28 U.S.C. § 1782; *see also Esses*, 101 F.3d at 875 (holding that a party to the foreign proceedings is an "interested person" within the meaning of the statute).  That leaves the "for use" requirement.  Intervenors contend that the convertible bonds are irrelevant to the Hong Kong proceedings and that the discovery Tianrui seeks is thus not for use in those proceedings.  ECF No. 84 ("Mot. to Quash Mem."), at 12-13; ECF No. 91 ("Cross-Mot. to Quash Mem."), at 13-14.  But even if true, neither CSC nor CNBM disputes that the discovery sought *is* for use in the Cayman Islands proceedings.  Thus, Tianrui's application satisfies all three of the statutory requirements.

As for the *Intel* factors, (1) Respondents are not participants in the Cayman Islands or Hong Kong proceedings; there is no suggestion, let alone showing, (2) that either jurisdiction is unreceptive to evidence collected pursuant to Section 1782 or (3) that Tianrui's application conceals an attempt to circumvent the foreign jurisdictions' proof-gathering restrictions or other policies; and (4) the request is not unduly intrusive or burdensome.  *See Intel*, 542 U.S. at 264-65.  With regard to the fourth factor, Respondents "produce . . . records [like those sought here] routinely and without significant cost or objection."  Martin Decl. ¶ 27.  And notably, no

Respondent has appeared in this case to oppose Tianrui's application. Additionally, although Tianrui's subpoenas were initially drafted to cover wire transfer records dated from July 1, 2018 through the "present," Appl. Ex. A; Am. Appl. 6, in light of the time that has passed since its initial application, Tianrui has agreed "to limit the relevant period to be from June 2018 to December 2018," which reduces the burden on Respondents. ECF No. 92 ("Opp'n"), at 12.

At bottom, CSC and CNBM's arguments against Tianrui's application largely rest on interpretations of Section 1782 that are foreclosed by Second Circuit precedent. Thus, for example, CSC faults Tianrui for "immediate[ly] resort[ing] to Section 1782 before there has been any discovery abroad." Mot. to Quash Mem. 3; *see also id.* at 14, 24-25; Cross-Mot. to Quash Mem. 15-19 ("Tianrui never attempted to seek the requested information . . . under the Cayman Islands discovery rules."). As noted, however, Section 1782 does not have an exhaustion requirement, *see Mees*, 793 F.3d at 303, as CSC itself later acknowledges, *see* Mot. to Quash Mem. 17. Likewise, CNBM contends that "the requested information [is un]necessary to allow Tianrui to proceed against CSC (or other shareholders) in the Cayman Islands," Cross-Mot. to Quash Mem. 16, but there is no necessity requirement either, *see Mees*, 793 F.3d at 303. And finally, CSC and CNBM contend that Tianrui has given the Court "no basis to infer that the Cayman or Hong Kong Courts would be receptive to Section 1782 discovery." Mot. to Quash Mem. 15; *see also* Cross-Mot. to Quash Mem. 17. But this contention turns the relevant standard on its head, as courts generally will deny a Section 1782 petition only upon a showing that the foreign tribunal would *not* be receptive to the evidence sought — a showing that CSC and CNBM have not made. *See Mees*, 793 F.3d at 303 n.20 (citing *Euromepa*, 51 F.3d at 1100).

For these reasons, the Court grants Tianrui's amended application and denies Intervenors' motions to quash the subpoenas. The Court also denies CSC's alternative motion for reciprocal

discovery, as CSC has not established that granting Tianrui's amended application would adversely affect "parity among adversaries" in either the Cayman Islands or Hong Kong proceedings. *Intel*, 542 U.S. at 262. Moreover, the discovery on which CSC would have this Court condition its order sweeps far more broadly than the discovery Tianrui seeks. CSC's proposed reciprocal discovery would require production of all "information in [Tianrui's] possession, custody, or control" concerning four topics, ranging from the convertible bonds to Tianrui's prior management of CSC and the suspension of CSC's shares from the Hong Kong Stock Exchange. ECF No. 87 ("Alt. Mot. Mem."), at 2-3. Such evidence would hardly be reciprocal to the more modest evidence that Tianrui seeks. *See, e.g.*, WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1505 (2d ed. 1983) (defining "reciprocal" as "corresponding; equivalent or interchangeable; complementary"). The Court therefore denies CSC's motion for reciprocal discovery (without prejudice to any future application by Intervenors, either pursuant to Section 1782 or in the foreign proceedings).

Finally, the Court grants CSC and CNBM's motions for a protective order to address their concerns regarding potential harm from disclosure of commercially sensitive information among competitors in the cement market. *See* Alt. Mot. Mem. 4-6; Cross-Mot. to Quash Mem. 23-25. The parties shall meet and confer in an attempt to agree on a proposed order.

## CONCLUSION

For the reasons stated above, Tianrui's amended application is GRANTED, subject to Tianrui's agreement to limit the scope of its proposed subpoenas to records of wire transfers conducted between June 2018 and December 2018. *See* Opp'n 12. CSC and CNBM's motions to quash the subpoenas are DENIED; CSC's motion for reciprocal discovery is DENIED; and CSC and CNBM's motions for a protective order are GRANTED. Counsel shall confer and,

**within one week of the date of this Memorandum Opinion and Order**, submit a proposed

protective order for the Court's consideration (mindful that the Court will strike or modify any

provision that purports to authorize any party to file material under seal absent a court order).  In

the event of any disputes as to the content of the proposed protective order, the parties shall

simultaneously file their preferred versions on ECF accompanied by letter-briefs explaining and

justifying their positions, and email Word versions of their respective proposed protective orders

to Furman_NYSDChambers@nysd.uscourts.gov.

The Court retains jurisdiction to enforce its decision and to adjudicate any disputes that

may arise in connection with its decision.  The Clerk of Court is directed to terminate ECF Nos.

72, 83, 86, and 90 and to close the case.


SO ORDERED.

Dated: October 22, 2020
   New York, New York

                  JESSE M. FURMAN
                 United States District Judge